UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, **Plaintiff,** v. **BACCARAT, INC.,** **Defendant.** | Civil Action No. 20-CV-02918 **COMPLAINT** **JURY TRIAL DEMAND** |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), Title I of the Americans with Disabilities Act of 1990 ("ADA"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of race and disability and to provide appropriate relief to Craig Madison. As alleged with greater particularity in paragraphs 14 to 25 below, the U.S. Equal Employment Opportunity Commission (the "EEOC") alleges that Defendant Baccarat, Inc. ("Defendant" or "Baccarat") violated Title VII and the ADA by discriminating against Madison because of his race (black) and disability, subjecting him to race- and disability-based harassment, thereby creating and maintaining a hostile work environment because of his race and disability that caused Madison's constructive discharge.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 102(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a); Section 703(a)(1) of

1

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1); Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3.  Plaintiff, the United States Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act and Title I of the ADA and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 107(a) of the ADA, 42 U.S.C. § 12117(a) which incorporates Sections 706(f)(1) and (3) of Title VII by reference.

4.  At all relevant times, Defendant has continually been a corporation organized under the laws of the State of Delaware, doing business in the State of New York and the County of New York, and has continuously had at least fifteen (15) employees.

5.  At all relevant times, Defendant has been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7) which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PREREQUISITES

6.  More than thirty (30) days prior to the institution of this lawsuit, a charge of discrimination (EEOC Charge No. 520-2018-04936) was filed with the EEOC, alleging violations of Title VII and the ADA by Baccarat.

7.  The EEOC investigated the charge.

8. On January 29, 2020, the EEOC issued a Letter of Determination to Defendant, finding reasonable cause to believe that Baccarat violated Title VII and the ADA.

9. The EEOC invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

10. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On March 11, 2020, the EEOC issued to Defendant a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this suit have been fulfilled.

## **STATEMENT OF CLAIMS**

14. At all relevant times, including since at least June 2014, Defendant operated a store that sells crystal products located at 635 Madison Avenue, Manhattan, New York.

15. Craig Madison was employed with Baccarat as a sales consultant at its Madison Avenue location from June 2014 to August 2018.

16. Madison is African-American.

17. Madison was an employee of Baccarat who had an impairment—dyslexia—that substantially limited him in one or more major life activities, including reading and learning, and/or whom Baccarat regarded as being disabled.

18. Accordingly, Madison is a qualified individual with a disability within the meaning of the ADA.

19. Since at least June 2014, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), and Section

102(a) of the ADA, 42 U.S.C. § 12112(a), by subjecting Madison to a hostile work environment, consisting of ongoing severe or pervasive harassment because of his race and his actual or perceived disability that Defendant permitted at its worksite and failed to remediate.

20. The unlawful practices alleged in paragraph 19 above include, but are not limited to, the following:

    a. From approximately June 2014 to December 2017, two of Madison's co-workers subjected him to daily harassment because of his race and actual or perceived disability.

    b. Throughout his employment with Defendant, Madison was typically subjected to several offensive comments a day relating to his race and his actual or perceived disability.

    c. The general manager who supervised Madison and directed his day-to-day work also engaged in the race-based harassment.

    d. Examples of the race harassment include, but are not limited to, the following:

        i. The first harassing co-worker ("co-worker one") told Madison on a number of occasions, "I love black people, everyone should own one."

        ii. On approximately a weekly basis, co-worker one would ask Madison questions about black women, including "Why are they hard?"; "Why are they aggressive?"; "Why are the masculine?"; and "Why can't they get married?" Co-worker one would also ask "Why do black and Hispanic women have so many babies?"

        iii. The second harassing co-worker ("co-worker two") often smirked

4

when co-worker one would ask these questions and vocally concurred with co-worker one's offensive comments about black women.

iv. Approximately once a week, co-worker one would ask Madison in reference to black men, "Why do they wear their pants hanging down?"

v. Approximately once a week, co-worker one would say, "Black men are more like children."

vi. Co-worker one repeatedly told Madison that black people do not have "hearts" or "values."

vii. Co-worker one called Madison a "big black queen" on many occasions.

viii. Co-worker one told Madison that his mother was on drugs.

ix. Co-worker one once asked Madison if he was born out of wedlock.

x. While employed with Defendant, Madison lived in Harlem and would tell the general manager about the great restaurants in his neighborhood. The general manager responded by saying that if she went to Harlem, she would need to wear "a bulletproof vest" and that black people would run after her to try to steal her Chanel bag.

xi. When there were instances of crime in Harlem, the general manager would often point it out to Madison. She said that there were not enough "good people" in Madison's neighborhood and that in order to go to Harlem, she would have to see more people "like her," more

"decent people." The general manager would also say that people "don't go north of 96th or 110th Street" in Manhattan.

e. Examples of the harassment based on Madison's actual or perceived disability include, but are not limited to, the following:

   i. Co-worker two once asked Madison, "What in your small, miniscule-size sponge thing that you call a brain would make you think you are up [next to help a customer]?"

   ii. Co-worker two often made belittling remarks that questioned Madison's intellectual ability and whether Madison should be working for Defendant.

   iii. On a number of occasions, co-worker one asked Madison when it was that he found out that he was dyslexic.

f. The harassing co-workers directed additional harassment at Madison because of his race and his actual or perceived disability, even though race, disability, or perceived disability were not explicitly referenced. Examples of this harassment include, but are not limited to, the following:

   i. Co-worker two frequently told Madison that he should commit suicide by jumping off a bridge.

   ii. Co-worker two frequently told Madison that he should quit.

   iii. Co-worker two spoke in a condescending manner to Madison in front of his clients, portraited Madison as incompetent, and tried to convince the clients that they should work with co-worker two rather than Madison.

      iv. On a number of occasions, the harassing co-workers told Madison that he was "nothing".

g. In the course of his employment, Madison complained to his general manager about the harassment approximately twenty times. Within the first eight months of his employment, Madison complained to the general manager of the harassment at least five times. Any action the general manager may have taken in response to Madison's numerous complaints was ineffective, as the harassment continued throughout Madison's employment. There were also more than a dozen occasions when the general manager witnessed the harassment and did nothing.

h. After approximately eight months of employment with Baccarat, Madison contacted the human resources director and informed her of the harassment.

i. Approximately two or three weeks after Madison contacted the human resources director, employees at Defendant's Madison Avenue location were provided with a one-hour anti-discrimination and anti-harassment training. The harassing co-workers were present for the training, as was the director of human resources and Baccarat's President and CEO.

j. Following the training, the harassment lessened somewhat for approximately two weeks.

k. Approximately two weeks after the training, the harassment renewed in the same manner as before. Madison again brought this to the general manager's attention; specifically, after the training was conducted,

        Madison informed the general manager at least another fifteen times that the harassment was continuing. The general manager did not take action to end the harassment.

    l.  Defendant's failure to stop the harassment was grossly negligent in that it failed to adequately respond to Madison's continued complaints to his general manager or to effectively monitor the workplace for further harassment after Madison's complaint to human resources and the one-hour training session.

21.    At the end of December 2017, Madison began a medical leave of absence because of the toll the harassment was taking on his well-being.

22.    In August 2018, Madison was constructively discharged, concluding that he could no longer tolerate going to work and facing the ongoing, unremedied harassment based on his race and disability.

23.    Defendant constructively discharged Madison by creating and maintaining a hostile work environment on the basis of race in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), and on the basis of actual or perceived disability, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), to the point where working conditions became so intolerable that Madison was compelled to resign.

24.    The unlawful employment practices complained of in paragraphs 19 through 23 were intentional.

25.    The unlawful employment practices complained of in paragraphs 19 through 23 were done with malice or with reckless indifference to the federally protected rights of Madison.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of race or national origin.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from harassing its employees because of their race, actual disability, or perceived disability.

C. Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for black employees and employees with actual or perceived disabilities and which eradicate the effects of its past and present unlawful practices;

D. Order Defendant to make Madison whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including rightful-place reinstatement;

E. Order Defendant to make Madison whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

F. Order Defendant to make Madison whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

G. Order Defendant to pay punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Date: April 9, 2020
New York, New York

Respectfully Submitted,

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507

/s/ Jeffrey Burstein_____
JEFFREY BURSTEIN
Regional Attorney

KIMBERLY CRUZ
Supervisory Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004

KIRSTEN PETERS
Trial Attorney
U.S. EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(929) 506-5325
kirsten.peters@eeoc.gov